Gregory A. Vega, Esq. (SBN 141477)
David M. Greeley, Esq. (SBN 198520)
SELTZER CAPLAN MCMAHON VITEK
750 B Street, Suite 2100
San Diego, California  92101-8177
Telephone:  619.685.3003; Facsimile: 619.685.3100
**vega@scmv.com**; greeley@scmv.com

David H. Bernstein, Esq. (NYSBN 2341071)
Jeremy Feigelson, Esq. (NYSBN 2518421)
Lauren E. Kapsky, Esq.  (NYSBN 5022652)
(admitted pro hac vice)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York  10022
Telephone:  212.909.6000; Facsimile: 212.521.7696
**dhbernstein@debevoise.com**;
jfeigelson@debevoise.com;
lekapsky@debevoise.com

Attorneys for Defendants CREATIVE NAIL DESIGN,
INC., REVLON CONSUMER PRODUCTS
CORPORATION, AND REVLON, INC.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALON SUPPLY STORE, LLC, | Case No. 14-CV-1083 BAS (RBB) |
| Plaintiff, | **DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS ALL CLAIMS AGAINST REVLON CONSUMER PRODUCTS CORPORATION AND REVLON, INC.; TO DISMISS CAUSES OF ACTION IV-VII AGAINST ALL DEFENDANTS; AND TO STRIKE CAUSES OF ACTION IV-VII AGAINST ALL DEFENDANTS** |
| v. | |
| CREATIVE NAIL DESIGN, INC., REVLON CONSUMER PRODUCTS CORPORATION, AND REVLON, INC., | |
| Defendants. | |
| | Judge: Hon. Cynthia A. Bashant |
| CREATIVE NAIL DESIGN, INC., | Magistrate Judge:   Ruben B. Brooks |
| Counterclaimant, | Hearing Date:   August 18, 2014 (Joint motion pending to change hearing date to August 25, 2014) |
| v. | |
| SALON SUPPLY STORE, LLC, | |
| Counterdefendant. | |

**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**

## TABLE OF CONTENTS

**INTRODUCTION**................................................................................................1

**ARGUMENT** ......................................................................................................1

    I.     CND's Communications to eBay and its Demand Letters to Salon Supply Are  Protected by California's Litigation Privilege............................1

    II.    CND's Assertion of Its Intellectual Property Rights Cannot Give Rise to Salon Supply's Tort and Unfair Competition Claims.......................4

    III.   Salon Supply's Tort and Unfair Competition Claims Should be Struck Pursuant to California's Anti-SLAPP Statute ...................................5

    IV.   The Conclusory References to CND's Corporate Parents Cannot Support Salon Supply's Effort to Pierce the Corporate Veil .......................8

**CONCLUSION**..................................................................................................8

## TABLE OF AUTHORITIES

CASES

*Aronson v. Kinsella*, 68 Cal. Rptr. 2d 305 (Cal. Ct. App. 1997).................................2

*Bailey v. Brewer*, 128 Cal. Rptr. 3d 380 (Cal. Ct. App. 2011) ........................................7

*Blanchard v. DIRECTV*, 20 Cal. Rptr. 3d 385 (Cal. Ct. App. 2004) ......................1, 3

*Cal. Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451 (9th Cir. 1985)..................3

*Calvert v. Huckins*, 875 F. Supp. 674 (E.D. Cal. 1995) ....................................................8

*Della Penna v. Toyota Motor Sales USA, Inc*., 902 P.2d 740 (Cal. 1995)..................4

*Dollar Tree Stores Inc. v. Toyama Partners, LLC,* No. C-10-00325-SI, 2010 WL
   1688583 (N.D. Cal. Apr. 26, 2010)........................................................................4

*Dudnikov v. MGA Entm't, Inc.*, 410 F. Supp. 2d 1010 (D. Colo. 2005) ......................4

*eCash Techs. Inc. v. Guagliardo*, 210 F. Supp. 2d 1138 (C.D. Cal. 2001) .................1

*Edwards v. Centex Real Estate Corp*., 61 Cal. Rptr. 2d 518 (Cal. Ct. App. 1997)......
   ................................................................................................................................2, 6

*Fleming v. Coverstone*, No. 08-cv-355 WQH (NLS), 2009 WL 764887 (S.D. Cal.
   Mar. 18, 2009).........................................................................................................5, 7

*Fremont Reorganizing Corp. v. Faigin*, 131 Cal. Rptr. 3d 478 (Cal. Ct. App.
   2011).............................................................................................................................7

*Korea Supply Co. v. Lockheed Martin Corp*., 63 P.3d 937 (Cal. 2003)......................4

*Lenz v. Universal Music Corp.*, C 07-3783 JF, 2010 WL 702466 (N.D. Cal. Feb.
   25, 2010)......................................................................................................................2

*Mendez v. Trinh*, SACV 11-1237 AG (ANx), 2011 U.S. Dist. LEXIS 158010
   (C.D. Cal. Dec. 9, 2011)..........................................................................................8

*Mory v. City of Chula Vista*, No. 07-CV-0462, 2008 WL 360449 (S.D. Cal., Feb.
   11, 2008).................................................................................................................5, 6

*Neville v. Chudacoff*, 73 Cal. Rptr. 3d 383 (Cal. Ct. App. 2008) ............................5, 6

*Sengchanthalangsy v. Accelerated Recovery Specialists, Inc.*, 473 F. Supp. 2d
1083 (S.D. Cal. 2007) .......................................................................................1, 3

*SoftMan Prods. Co., LLC v. Adobe Sys. Inc.*, 171 F. Supp. 2d 1075 (C.D. Cal.
2001) ........................................................................................................................ 3

*Starlite Dev. (China) Ltd. v. Textron Fin. Corp.*, No. CV-F-07-1767 OWW-DLB,
2008 WL 2705395 (E.D. Cal. July 8, 2008) .................................................4

*Tuck Beckstoffer Wines LLC v. Ultimate Distribs., Inc.*, 682 F. Supp. 2d 1003
(N.D. Cal. 2010) ....................................................................................................5

*Whitty v. First Nationwide Mortg. Corp.*, No. 05-CV-1021 H (BLM), 2007 WL
628033, (S.D. Cal. Feb. 26, 2007) ...................................................................9

*Zora Analytics, LLC v. Sakhamuri*, No. 3:13-CV-639-JM-WMC, 2013 WL
4806510 (S.D. Cal. Sept. 9, 2013) ...................................................................5

**STATUTES**

17 U.S.C. § 512(c) ........................................................................................................2

Cal. Bus. & Prof. Code § 17200 ...............................................................................5

California Civil Code § 47 ....................................................................................1, 6

California Code of Civil Procedure § 425.16 ...............................................5, 6, 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' REPLY IN SUPPORT OF                   14-CV-1083- BAS-RBB
MOTIONS TO DISMISS AND STRIKE

1

## **INTRODUCTION**

As explained in Defendants' moving brief, Salon Supply has failed to plead the required elements of its tort and unfair competition claims; these claims also are barred by California's litigation privilege, and should be struck pursuant to California's Anti-SLAPP statute, because they are based exclusively upon CND's protected assertion of its trademark rights.  In response, Salon Supply offers little but heated rhetoric and an attack on the merits of CND's trademark rights.  Salon Supply's argument ignores that, on this motion to dismiss, no inquiry into the merits is appropriate. On their face, all of CND's acts and communications were legally protected because they were made in furtherance of efforts to assert CND's trademark rights, and they remain protected regardless of whether CND ultimately prevails. Likewise, all claims against Revlon, Inc. and RCPC should be dismissed because those corporate parents are not alleged to have engaged in any activity that would support piercing the veil between them and their subsidiary CND.

## **ARGUMENT**

**I.     CND's Communications to eBay and its Demand Letters to Salon Supply Are  Protected by California's Litigation Privilege**

California's litigation privilege, codified at California Civil Code § 47(b), protects CND's demand letters to Salon Supply and its communications to eBay about Salon Supply.  "It has long been the law that communications that bear 'some relation' to an anticipated lawsuit fall within the privilege.  The privilege has been broadly applied to demand letters and other prelitigation communications by attorneys." *Blanchard v. DIRECTV*, 20 Cal. Rptr. 3d 385, 396 (Cal. Ct. App. 2004) (citations omitted).  The privilege also applies to communications with third parties, such as eBay, that are related to the dispute.  *eCash Techs. Inc. v. Guagliardo*, 210 F. Supp. 2d 1138, 1152 (C.D. Cal. 2001).  Importantly for present purposes, "***any doubt about whether the privilege applies is resolved in favor of applying it.***"  *Sengchanthalangsy v. Accelerated Recovery Specialists, Inc.*, 473 F. Supp. 2d 1083, 1087 (S.D. Cal. 2007)

DEFENDANTS' REPLY IN SUPPORT OF
MOTIONS TO DISMISS AND STRIKE                              14-CV-1083- BAS-RBB

1    (citation omitted) (emphasis added).

2         The cases Salon Supply cites for the proposition that takedown notices fall

3    outside the scope of the privilege are limited to notices pursuant to the Digital

4    Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(c), which established a unique

5    notice-and-takedown scheme that applies only to copyright disputes and is specifically

6    "designed to avoid court involvement." *See, e.g.*, *Lenz v. Universal Music Corp.*, C 07-

7    3783 JF, 2010 WL 702466 (N.D. Cal. Feb. 25, 2010).  The DMCA does not apply to

8    disputes over trademarks (like the disputes in this case), and CND did not invoke the

9    DMCA in the communications at issue.

10        On their face, CND's communications to eBay and to Salon Supply were made in

11   good-faith consideration of litigation, and this fully supports application of the litigation

12   privilege notwithstanding Salon Supply's rhetoric to the contrary.  eBay's October 27,

13   2012 email to Salon Supply shows that CND (then doing business as The Colomer

14   Group) "notified eBay that [Salon Supply's listings] violate[d] intellectual property

15   rights."  First Amended Complaint ("FAC") Ex. E (Doc. 22-6 at 6).  Colomer's demand

16   letter emailed to Salon Supply a few days later stated that Colomer would "take all

17   necessary legal actions to protect its intellectual property rights, including court filings."

18   FAC Ex. F (Doc. 22-6 at 11); *see also* FAC Ex. G (follow up letter dated February 28,

19   2013).  CND sent additional demand letters on November 4 and December 11, 2013,

20   and filed additional notices with eBay in January 2014.  FAC ¶¶ 29-32 and Exs. H-I.

21   All of these communications clearly relate to the trademark claims at issue in this

22   litigation.

23        That these communications occurred over a period from October 2012 through

24   January 2014 does not undermine their protected status.  Contrary to Salon Supply's

25   argument, "the litigation privilege is not conditioned upon an 'imminency' requirement

26   separate from the requirement that prelitigation statements be made in serious and good

27   faith consideration of litigation." *Aronson v. Kinsella*, 68 Cal. Rptr. 2d 305, 314 (Cal.

28   Ct. App. 1997) (discussing *Edwards v. Centex Real Estate Corp.*, 61 Cal. Rptr. 2d 518

2

(Cal. Ct. App. 1997), cited by Salon Supply on page 20 of its opposition brief).

Further, there is nothing illegal or malicious about policing registered trademarks, and Salon Supply points to no authority stating otherwise. Nor is there any requirement that, before it can apply the protections of the litigation privilege, this Court must make a determination of the validity of the position being asserted in the litigation-related communications. On the contrary, it would be difficult to ever apply the privilege if such a requirement existed. There are always two sides to a litigation; the whole point of the privilege is to protect both sides' ability to state their case without requiring the court applying the privilege to pick which one is right.[1] Salon Supply's attacks on CND's merits position cannot strip CND's communications with eBay and Salon Supply of their protected character. *See Blanchard*, 20 Cal. Rptr. 3d at 397 ("communications made in connection with litigation do not necessarily fall outside the privilege merely because they are, or are alleged to be, fraudulent, perjurious, unethical, or even illegal assuming they are logically related to litigation") (quotation marks and citation omitted); *Sengchanthalangsy*, 473 F. Supp. 2d at 1087 ("If the litigation privilege applies, then the protection provided is absolute, even when a statement is made with malice."). Counts IV through VII thus fail as a matter of law and should be dismissed.

---

[1]   That CND's SHELLAC® mark was registered on the Supplemental Register hardly shows that CND lacked grounds for enforcing the mark. Marks on the Supplemental Register can and do form the basis of successful trademark infringement suits. *See, e.g., Cal. Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451 (9th Cir. 1985). In any event, during the time when CND issued the challenged communications, CND also owned several registrations on the Principal Register that included SHELLAC, which the PTO found to be distinctive. FAC ¶ 18, Ex. A. Also without merit is Salon Supply's contention that its activities are protected by the first sale doctrine; Salon Supply's sale of materially different goods invalidates any first sale right. *SoftMan Prods. Co., LLC v. Adobe Sys. Inc.*, 171 F. Supp. 2d 1075, 1092 (C.D. Cal. 2001) ("The first sale doctrine does not apply . . . when an alleged infringer sells trademarked goods that are materially different than those sold by the trademark owner.").

DEFENDANTS' REPLY IN SUPPORT OF
MOTIONS TO DISMISS AND STRIKE                    14-CV-1083- BAS-RBB

## II.   CND's Assertion of Its Intellectual Property Rights Cannot Give Rise to Salon Supply's Tort and Unfair Competition Claims

Salon Supply's tort claims for "interference" also fail because plaintiff must plead "conduct that was wrongful ***by some legal measure other than the fact of interference itself***." *Della Penna v. Toyota Motor Sales USA, Inc.*, 902 P.2d 740, 751 (Cal. 1995) (emphasis added).  "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard."  *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 954 (Cal. 2003).   Regardless of whether the trademark rights being invoked by CND are valid, Salon Supply falls short of this pleading standard.   It has not, for example, alleged that CND's alleged interference violated antitrust law.  Without well-pled allegations of independently wrongful conduct, Counts IV and V cannot stand.

Courts regularly dismiss interference with contractual relations claims, like Salon Supply's, where, as here, it is plain on the face of the complaint that the defendant was acting with a legitimate business purpose.  *See e.g.*, *Dollar Tree Stores Inc. v. Toyama Partners, LLC*, No. C-10-00325-SI, 2010 WL 1688583, at *4 (N.D. Cal. Apr. 26, 2010) (granting motion to dismiss interference with contract claim because "the complaint and [contract] disclose that [defendant] was acting with a legitimate business purpose and was justified in [its actions]"); *Starlite Dev. (China) Ltd. v. Textron Fin. Corp.*, No. CV-F-07-1767 OWW-DLB, 2008 WL 2705395, at *19 (E.D. Cal. July 8, 2008) (dismissing interference with contract claim because defendant's alleged act was "to protect its economic interests by seeking court intervention").   Salon Supply concedes that CND held registered trademarks and sought to protect its interests in those marks by reporting trademark infringement violations to eBay.  FAC ¶¶ 18, 25.   CND was justified in taking such action.  *Cf. Dudnikov v. MGA Entm't, Inc.*, 410 F. Supp. 2d 1010, 1014 (D. Colo. 2005) (defendant's use of eBay's VeRO Program to assert intellectual property rights via termination of plaintiff's auction listings could not support tortious interference claim).

DEFENDANTS' REPLY IN SUPPORT OF            14-CV-1083- BAS-RBB
MOTIONS TO DISMISS AND STRIKE

CND's efforts to protect its trademarks by filing VeRO notices with eBay also cannot support a claim under the unlawfulness prong of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 (prohibiting "any unlawful, unfair, or fraudulent business act or practice"). As set out above, the tort claims fail as a matter of law because they are barred by the litigation privilege. *See Tuck Beckstoffer Wines LLC v. Ultimate Distribs., Inc.*, 682 F. Supp. 2d 1003, 1019-20 (N.D. Cal. 2010) (the UCL "borrows" violation of other laws; "where a plaintiff cannot state a claim under the 'borrowed' law, it cannot state a UCL claim either"). Salon Supply fares no better under the "unfairness" prong of the UCL, which requires that the allegedly "unfair" conduct either be "tethered to specific constitutional, statutory, or regulatory provisions" or be based upon acts that are "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Zora Analytics, LLC v. Sakhamuri*, No. 3:13-CV-639-JM-WMC, 2013 WL 4806510, at *8 (S.D. Cal. Sept. 9, 2013) (quotation marks and citations omitted). Salon Supply's pleading points only to garden-variety trademark enforcement efforts, and thus fails to adequately plead facts that could support a claim under either standard.

## III. Salon Supply's Tort and Unfair Competition Claims Should be Struck Pursuant to California's Anti-SLAPP Statute

For the Anti-SLAPP statute to apply, CND need only make "a threshold showing that the challenged cause of action is one arising from a protected activity." *Mory v. City of Chula Vista*, No. 07-CV-0462, 2008 WL 360449, at *9 (S.D. Cal., Feb. 11, 2008). CND's demand letters and communications with eBay were made in connection with anticipated litigation; as such, they are squarely in the activities that are expressly protected by California's Anti-SLAPP Statute. *Fleming v. Coverstone*, No. 08-cv-355 WQH (NLS), 2009 WL 764887, at *3 (S.D. Cal. Mar. 18, 2009) ("Statements made in connection with anticipated litigation constitute protected activity within the definition of section 425.16(e)(2) [of the Anti-SLAPP statute]."). The length of time between the communications and the beginning of the litigation is not relevant. *See Neville v.*

1  *Chudacoff*, 73 Cal. Rptr. 3d 383, 393 (Cal. Ct. App. 2008).  In any event, the

2  communications at issue occurred from October 2012 through January 2014, FAC ¶¶

3  25, 27, 29, 30, 31, 32, *id.* Exs. E-I, which is hardly too far in the past to defeat the

4  protections of the Anti-SLAPP statute.  *Neville*, 73 Cal. Rptr. 3d at 393 (distinguishing

5  *Edwards*, 61 Cal. Rptr. 2d 518, in part because "the statements at issue in *Edwards* were

6  made more than *five years* before the lawsuits were filed, as opposed to the *four months*

7  in this case.).

8          Nor does it matter that Salon Supply initiated this suit instead of CND.  The Anti-

9  SLAPP statute was designed to protect defendants from suit.  *See, e.g.*, *Mory*, 2008 WL

10  360449, at \*9.  The letters and communications are about the overall dispute that forms

11  the basis of this litigation, including CND's counterclaims.  Furthermore, even if some

12  aspect of the communications related to plaintiff's claims (*e.g.*, Salon Supply's

13  improper sale of Bluesky Shellac products in 2012) rather than to CND's counterclaims

14  (which focus on Salon Supply's more recent improper resale of CND SHELLAC®

15  products), the entire communication would still be protected because, "[w]here a cause

16  of action alleges both protected and unprotected activity, the cause of action will be

17  subject to section 425.16 unless the protected activity is 'merely incidental' to the

18  unprotected conduct."  *Id.* at \*9 n.8; *see also Neville*, 73 Cal. Rptr. 3d at 389 ("Both

19  section 425.16 and Civil Code section 47 are construed broadly, to protect the right of

20  litigants to the utmost freedom of access to the courts without [the] fear of being

21  harassed subsequently by derivative tort actions.") (quotation marks and citations

22  omitted).  Here, the claims and  counterclaims are closely related because they all relate

23  to Salon Supply's violation of the SHELLAC® trademark and whether that trademark

24  was properly registered by the PTO.

25          Salon Supply's argument fails under both steps of the Anti-SLAPP analysis.

26  "First, the court decides whether the defendant has made a threshold showing that the

27  challenged cause of action is one arising from protected activity."  *Fleming*, 2008 WL

28  764887, at \*3 (quotation marks and citation omitted).  If that first showing is met  the

6

1   Court then considers "whether the plaintiff has demonstrated a probability of prevailing
2   on the claim." *Id.*

3       Because CND has shown that its activities were protected, CND prevails under
4   the first step.  Contrary to Salon Supply's arguments, the merits of CND's position have
5   no effect on the first prong of this analysis, *i.e.*, whether CND's communications are
6   protected by the Anti-SLAPP statute.  *Bailey v. Brewer*, 128 Cal. Rptr. 3d 380 (Cal. Ct.
7   App. 2011), on which Salon Supply relies, expressly makes this point:  it recognizes that
8   "a party need not demonstrate that it would succeed on the merits of the contemplated
9   litigation in order to invoke the protection of the litigation privilege or section 425.16."
10  *Id.* at 390.  Salon Supply's other authority is no more helpful to its arguments; *Fremont
11  Reorganizing Corp. v. Faigin*, 131 Cal. Rptr. 3d 478, 491 (Cal. Ct. App. 2011), holds
12  only that the Anti-SLAPP statute does not apply when the evidence conclusively
13  establishes that the conduct on which the action is based was criminally illegal –
14  circumstances that plainly do not apply here.

15      CND also prevails under the second step in the analysis because Salon Supply has
16  not demonstrated a probability of prevailing on its claim.  Given that the litigation
17  privilege protects CND's communications with eBay, Salon Supply cannot prevail on
18  its claims.  *See, e.g.*, *Fleming*, 2008 WL 764887, at *5 ("[p]laintiff has failed to
19  demonstrate a probability of prevailing on his extortion claim because the statements
20  underlying the claim are absolutely immune from tort liability under the litigation
21  privilege").  Defendants are thus entitled to an order striking these claims, as well as to
22  recovery of their attorney's fees under the Anti-SLAPP statute.[2]

23  _____

24  [2] In an apparent effort to avoid the page limits on its brief, Salon Supply has lodged a
25  document called "Evidentiary Objections," arguing that the Court should exclude from
    its consideration Exhibits A-C and Exhibit L to the moving papers.  It is unclear at best
26  what statements in Exhibits A-C Salon Supply finds objectionable. It is not surprising
27  that Salon Supply would prefer to exclude Exhibit L, the Facebook post in which Salon
    Supply acknowledged, contrary to its position in this litigation, that the SHELLAC®
28  brand is well-recognized.  Salon Supply's only objection to Exhibit L is that it lacks

DEFENDANTS' REPLY IN SUPPORT OF                    14-CV-1083- BAS-RBB
MOTIONS TO DISMISS AND STRIKE

## IV. The Conclusory References to CND's Corporate Parents Cannot Support Salon Supply's Effort to Pierce the Corporate Veil

Salon Supply's claim that CND is the alter ego of its parent corporations is purely conclusory.  It alleges that Revlon and RCPC (which acquired CND in October 2013, long after many of the actions at issue) now directly control the management and enforcement of CND's trademarks, FAC ¶ 28, but it is undisputed that all of the trademarks at issue are owned by CND and that all of the correspondence about which Salon Supply complains was sent by CND.  Salon Supply also fails to offer any precedent to refute the rule that shared legal services between a parent and its subsidiaries (*see* FAC ¶¶ 28, 30, *id.* Exs. A, C, D, J, K) is inadequate as a matter of law to show the unity of interest required to pierce the corporate veil.  *See, e.g.*, *Calvert v. Huckins*, 875 F. Supp. 674, 679 (E.D. Cal. 1995) (shared legal services "[do] not suffice to establish the measure of control necessary to justify disregarding the corporate entity"); *Whitty v. First Nationwide Mortg. Corp.*, No. 05-CV-1021 H (BLM), 2007 WL 628033, at *7 (S.D. Cal. Feb. 26, 2007) (to prove alter ego liability, plaintiff must show a unity of interest and ownership such that separate corporate personalities no longer exist, and resulting inequity).  Thus, the fact that Revlon attorneys are assisting with the protection of CND's trademarks is irrelevant.

## CONCLUSION

The FAC should be dismissed in its entirety as against Revlon, Inc. and  RCPC, and Counts IV through VII should be dismissed and struck as against all defendants, with an award of attorneys' fees and such other relief as the Court deems just.

[Signature Page Follows]

---

foundation – yet in paragraph 13 of the Declaration of Lauren E. Kapsky, Ms. Kapsky stated that she personally viewed the post on the day it was captured.  (Doc. 30-3, ¶ 13).  The Court has discretion as to whether or not to consider these exhibits, *Mendez v. Trinh*, SACV 11-1237 AG (ANx), 2011 U.S. Dist. LEXIS 158010, at *2 (C.D. Cal. Dec. 9, 2011), and in any event, Defendants' legal arguments on this motion are fully established with or without reliance on the exhibits.

Dated:        August 11, 2014

                              SELTZER CAPLAN MCMAHON VITEK
                              A Law Corporation

                              By:      s/ Gregory A. Vega
                                    Gregory A. Vega
                                    David M. Greeley
                              E-Mails: vega@scmv.com
                                         greeley@scmv.com

                              DEBEVOISE & PLIMPTON LLP
                                    David H. Bernstein
                                    Jeremy Feigelson
                                    Lauren E. Kapsky
                                    (admitted pro hac vice)
                              E-Mails: dhbernstein@debevoise.com
                                         jfeigelson@debevoise.com
                                         lekapsky@debevoise.com

DEFENDANTS' REPLY IN SUPPORT OF                    14-CV-1083- BAS-RBB
MOTIONS TO DISMISS AND STRIKE

## CERTIFICATE OF SERVICE

I hereby certify that I am over the age of eighteen and am not a party to this action. On today's date, I filed a true and correct copy of the foregoing document(s) through this court's Electronic Filing System (ECF). By virtue of the ECF system, Counsel for Plaintiff, and all interested parties, were served electronically upon the filing of this document.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated: August 11, 2014              SELTZER CAPLAN McMAHON VITEK
                                    A Law Corporation

                                    By:   *s/ Gregory A. Vega*
                                    Attorneys for Defendants,
                                    CREATIVE NAIL DESIGN, INC.,
                                    REVLON CONSUMER PRODUCTS
                                    CORPORATION, and REVLON, INC.
                                    E-Mail:  vega@scmv.com

Case No.  14-CV-1083 BAS (RBB)