1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10
11

SALON SUPPLY STORE, LLC,

Plaintiff,

12
13

v.

14

CREATIVE NAIL DESIGN, INC., *ET AL.*,

15
16

Defendants.

17
18
19
20
21
22
23

Case No.  14-cv-01083-BAS(RBB)

**ORDER:**

**(1) DENYING CREATIVE NAIL DESIGN, INC.'S MOTION TO DISMISS CAUSES OF ACTION IV, V, VI, AND VII (ECF NO. 30); AND**

**(2) DENYING CREATIVE NAIL DESIGN, INC.'S MOTION TO STRIKE CAUSES OF ACTION IV, V, VI, AND VII (ECF NO. 31); AND**

**(3) DENYING IN PART AND GRANTING IN PART REVLON CONSUMER PRODUCTS CORPORATION'S AND REVLON, INC.'S MOTION TO DISMISS (ECF NO. 32)**

24
25
26
27
28

Plaintiff Salon Supply Store, LLC ("Plaintiff") commenced this action on April 30, 2014.  On June 12, 2014, Plaintiff filed a First Amended Complaint ("FAC") against Defendants Creative Nail Design, Inc. ("CND"), Revlon Consumer Products Corporation ("RCPC"),  and Revlon, Inc. ("Revlon") (collectively, "Defendants") seeking a declaration of genericness, a declaration of

– 1 –

14cv1083

non-infringement of trademark, and cancellation of U.S. Supplemental Registration, and alleging intentional and negligent interference with prospective economic advantage, intentional interference with contractual relations, and unfair competition under California Business and Professions Code §§ 17200, *et seq*. (ECF No. 22.)

Thereafter, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, RCPC and Revlon moved to dismiss all causes of action alleged against them (ECF No. 32), and CND moved to dismiss causes of action IV-VII (ECF No. 30).  CND also moved to strike causes of action IV-VII pursuant to California's anti-SLAPP statute, California Code of Civil Procedure § 425.16.  (ECF No. 31.)[1]

On August 21, 2014, after obtaining leave of Court, Plaintiff filed a Second Amended Complaint ("SAC") asserting the same causes of action against CND, RCPC, and Revlon. (ECF No. 45.)  The parties agreed and represented to the Court that the revisions to the SAC did not affect the issues raised and citations included in the pending motions to dismiss and strike.  Therefore, the Court agreed to treat the pending motions to dismiss and strike the FAC as challenging the SAC.  (*See* ECF No. 44.)

The Court finds these motions suitable for determination on the papers submitted and without oral argument.  *See* Civ. L.R. 7.1(d)(1).  For the reasons set forth below, the Court **DENIES** CND's motion to dismiss causes of action IV-VII (ECF No. 30); **DENIES** CND's motion to strike causes of action IV-VII (ECF No. 31); and **DENIES IN PART** and **GRANTS IN PART** RCPC's and Revlon's motion to dismiss all causes of action alleged against them (ECF No. 32).

///

///

---

[1]      Defendants filed one memorandum of points and authorities in support of their motions.  (*See* ECF No. 30-7 ("Mot.").)

# I.    BACKGROUND[2]

Plaintiff sells nail polishes and varnishes manufactured by third parties, including CND, through its own online retail store and through other online stores, including eBay.com ("eBay").  (SAC at ¶ 13.)   Since 2010, Plaintiff has sold several nail polishes that incorporate the term "shellac," including "BlueSky Shellac" and CND's gel nail polish product, "CND Shellac."  (*Id*. at ¶¶ 14, 17.)

On August 11, 2009, CND applied to register the term "SHELLAC" (U.S. Serial No. 77801818) with the United States Patent and Trademark Office ("USPTO") as a standalone trademark, but the USPTO denied registration of this mark on the Principal Register allegedly "on the basis that 'shellac' is generic for nail varnish or other related coatings, and that the relevant public would understand the term 'shellac' to refer to these goods and not [CND]'s specific goods."  (*Id*. at ¶ 21.)   Instead, "SHELLAC" is registered on the Supplemental Register of the USPTO, which allegedly "indicates that it was not considered distinctive and therefore not capable of acting as a source identifier at the time the application was examined."  (*Id*. at ¶ 19.)  Plaintiff alleges evidence therefore exists demonstrating that the term "shellac" "lacks distinctive character and is not capable of acting as a source identifier."  (*Id*.; *see also* ¶ 20.)

In 2012, representatives of The Colomer Group, on behalf of CND, filed over 100 claims with eBay reporting trademark infringement violations by Plaintiff.  (*Id*. at ¶ 25.)   The Colomer Group and CND allegedly falsely informed eBay that they held exclusive federal trademark rights in "SHELLAC" and that the items listed for sale by Plaintiff on eBay under the name "BlueSky Shellac" were in violation of those rights.  (*Id*.)  CND cited its Supplemental Registration of "SHELLAC" as the

---

[2]      The following allegations are taken from the SAC, unless otherwise indicated.  Plaintiff filed objections to several exhibits submitted by Defendants in support of their motions.  (ECF No. 38-6.)  The Court overrules the objections as moot, as it did not rely on the exhibits to which objections were made.

1   basis for these claims.  (*Id.*)  In response, eBay removed Plaintiff's listings and

2   reduced the visibility of Plaintiff's goods on its online marketplace for

3   approximately four weeks.  (*Id.* at ¶ 26.)  The action forced Plaintiff to stop selling

4   "BlueSky Shellac" on eBay and caused Plaintiff approximately $100,000 in lost

5   profits.  (*Id.*)

6       On November 5, 2012, and again on February 28, 2013, Plaintiff received

7   cease and desist emails from representatives of The Colomer Group, on behalf of

8   CND.  (*Id.* at ¶¶ 25, 27, Exhs. F, G.)  The letters threatened legal action.  (*Id.* at ¶

9   27, Exhs. F, G.)  The November 5, 2012 email stated that "Colomer is the owner of

10  the well-known trademark 'SHELLAC'" and demanded that Plaintiff "immediately

11  remove or disable access to" the BlueSky Shellac nail polish listings on its website

12  (http://www.salonsupplystore.com), as the "practice infringes upon the exclusive

13  intellectual property rights of Colomer."  (*Id.* at Exh. F.)  The Colomer Group

14  stated that Plaintiff's failure to comply with its demands would force it to defer the

15  issue to its "Trademark Lawyer for further actions" and advised that it will "take all

16  necessary legal actions to protect its intellectual property rights."  (*Id*.)  The

17  February 28, 2013 email, with the subject line: "2ND NOTICE OF INFRINGING

18  CONTENT," stated that "it has come to [The Colomer Group's] attention that "[its]

19  trademark 'SHELLAC' appears as a metatag, keyword, visible or hidden text on the

20  web site(s) located at http://www.salonsupplystore.com without having obtained

21  prior written authorization . . . [and] [t]his practice infringes upon the exclusive

22  intellectual property rights of Colomer."  (*Id*. at Exh. G.)  The February 28 email

23  insists Plaintiff remove all allegedly infringing "metatags, keywords, visible or

24  hidden texts including trademark" and advises that "Colomer reserves its right to

25  commence any legal action that [it] considers appropriate before the corresponding

26  legal authorities."  (*Id*.)

27      On July 17, 2013, CND filed two new applications for the term "SHELLAC"

28  with the USPTO.  (*Id.* at ¶ 22.)  These applications were published on the Principal

Register on January 7, 2014. (*Id.*) On April 29, 2014, Plaintiff filed a Notice of Opposition against the two applications filed by CND for the term "SHELLAC" with the Trademark Trial and Appeal Board. (*Id.* at 23.)

Plaintiff alleges that in or around August of 2013, Revlon, through its wholly owned operating subsidiary RCPC, acquired The Colomer Group, which owns CND. (*Id.* at ¶ 28.) Plaintiff further alleges that Revlon began controlling the management and enforcement of CND's trademarks at that time. (*Id.*) The correspondence address associated with the trademarks, and the counsel of record in charge of the marks, were changed with the USPTO to reflect Revlon ownership and management. (*Id.* at ¶ 28, Exhs. A, C, D, J, K.)

On November 4, 2013, Plaintiff received an email from Mr. Jack Carrothers, CND's corporate counsel, demanding that Plaintiff stop selling and advertising CND products online through its own website and third party websites including eBay. (*Id.* at ¶ 29, Exh. H.) The letter informed Plaintiff of CND's "concerns over [Plaintiff's] sales of CND branded products and the misrepresentation that [the] company is an authorized CND distributor." (*Id.* at Exh. H.) Citing safety concerns over Plaintiff's "selling of grey market CND products," CND demanded, among other things, that Plaintiff "[i]mmediately stop all sales and/or advertising of CND products on [its] website and the Marketplaces," including eBay. (*Id.*) CND stated that Plaintiff's "prompt and full cooperation will enable [it] to resolve th[e] matter quickly and without recourse to any formal legal action." (*Id.*)

On December 11, 2013, Plaintiff received a similar email from Mr. Carrothers—now using a "revlon.com" email address—who alleged Plaintiff's activities in reselling CND products they bought from CND distributors amounted to "unlawful inducement to breach contract." (*Id.* at ¶ 30, Exh. I.) In the letter, CND raised a new "safety issue" concerning Plaintiff's shipment of CND's products. (*Id.* at Exh. I.) Again, CND made demands and stated that Plaintiff's

"prompt and full cooperation will enable [it] to resolve th[e] matter quickly and without recourse to any formal legal action," but did not mention any alleged trademark infringement. (*Id*.)

In or about January 2014, Revlon and CND filed claims with eBay to report trademark infringement violations by Plaintiff in its use of the term "shellac," thereby causing eBay to remove four of Plaintiff's listings from the online marketplace. (*Id*. at ¶¶ 31-32.) In response to emails sent by counsel for Revlon and CND, Plaintiff notified counsel on or about January 24, 2014 that his clients did not have the right to report Plaintiff's listings because "CND did not own an enforceable federal trademark in the term 'shellac', but merely held a supplemental registration." (*Id*. at ¶ 32.)

In sum, Plaintiff alleges Defendants "have developed a concerted business strategy to shut down Plaintiff's online retail business by any means necessary, and in particular, stop Plaintiff from selling goods under the name 'shellac,' in order to be able to more fully monopolize the generic term themselves." (*Id*. at ¶ 33.)

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co*., 80 F.3d 336, 337-38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

14cv1083

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . law[] in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

As a general rule, a court freely grants leave to amend a complaint which has been dismissed. Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co.,* 806 F.2d at 1401 (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962)).

## III.   DISCUSSION

### A.   CND's Motion to Dismiss Causes of Action IV-VII

CND moves to dismiss causes of action IV-VII under Rule 12(b)(6) arguing (1) California's litigation privilege protects its pre-litigation communications (Mot. at pp. 10-11); (2) the assertion of intellectual property rights cannot give rise to a tortious interference claim (*id.* at pp. 11-15); and (3) Plaintiff's unfair competition

1   claim fails (*id.* at pp. 16-17).

2       1. <u>California's Litigation Privilege</u>

3      Plaintiff's causes of action for intentional and negligent prospective

4   economic advantage (causes of action IV-V), intentional interference with

5   contractual relations (cause of action VI), and unfair competition under California

6   Business and Professions Code § 17200 (cause of action VII) against all Defendants

7   are premised on takedown notices sent to eBay from 2012 to January 2014.  CND

8   argues California's litigation privilege bars these claims.  (Mot. at pp. 10-11.)

9      The "principal purpose" of California's litigation privilege is "to afford

10  litigants and witnesses . . . the utmost freedom of access to the courts without fear

11  of being harassed subsequently by derivative tort actions."  *Silberg v. Anderson*, 50

12  Cal. 3d 205, 213 (1990) (citations omitted).  To this end, "California courts have

13  given the privilege an expansive reach."  *Rubin v. Green*, 4 Cal. 4th 1187, 1193-94

14  (1993).  The privilege, codified in California Civil Code § 47(b), is generally

15  described as applying to "any communication (1) made in judicial or quasi-judicial

16  proceedings; (2) by litigants or other participants authorized by law; (3) to achieve

17  the objects of the litigation; and (4) that have some connection or logical relation to

18  the action."  *Silberg*, 50 Cal. 3d at 212; *see also* Cal. Civ. Code § 47(b).

19     The third prong, which is "in essence, simply part of" the fourth prong, does

20  not function as a "test of the motives, morals, ethics or intent of the person claiming

21  the privilege." *See id*. at 219-20; *see also Rothman v. Jackson*, 49 Cal. App. 4th

22  1134, 1141 (1996) (citing *Silberg*, 50 Cal. 3d at 220).  The privilege is considered

23  absolute, capable of protecting even malicious or fraudulent statements, and applies

24  to all torts except malicious prosecution.  *Id.* at 212-18.

25     To have a "connection or logical relation to the action," the communication

26  must "function as a necessary or useful step in the litigation process and must serve

27  its purposes."  *Rothman*, 49 Cal. App. 4th at 1146.  This test "cannot be satisfied by

28  communications which only serve interests that happen to parallel or complement a

party's interest in the litigation." *Id.* at 1147.  Instead, the "connection or logical relation" requirement "can be satisfied only by communications which function intrinsically, and apart from any consideration of the speaker's intent, to advance a litigant's case." *Id.* at 1148.

The privilege applies to an otherwise qualifying communication even if it is "made outside the courtroom and no function of the court or its officers is involved." *Silberg*, 50 Cal.3d at 212.  As such, the privilege applies to "statements made in dialogues preliminary to litigation" or "in anticipation of" litigation. *Rothman*, 49 Cal. App. 4th at 1140-45; *see also Rubin*, 4 Cal. 4th at 1194-95 (the privilege applies to communications with "some relation" to an "anticipated lawsuit" and "prelitigation communications"); *Hagberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350, 361 (2004) ("Many cases have explained that section 47(b) encompasses . . . statements made prior to the filing of a lawsuit, whether in preparation for anticipated litigation or to investigate the feasibility of filing a lawsuit.").  Prelitigation statements, however, must be made in connection with a proposed litigation "contemplated in good faith and under serious consideration" to be covered by the privilege.  *Aronson v. Kinsella*, 58 Cal. App. 4th 254, 262 (1997) (quoting *Edwards v. Centex Real Estate Corp.*, 53 Cal. App. 4th 15, 33 (1997)). The question of whether the litigation privilege applies is "a matter of law" when the circumstances under which the communication was made are not in dispute. *Costa v. Super. Ct.*, 157 Cal. App. 3d 673, 678 (1984).  "Any doubt about whether the privilege applies is resolved in favor of applying it."  *Kashian v. Harriman*, 98 Cal. App. 4th 892, 913 (2002).

Unlike communications between the parties, the privilege generally does not extend to communications with third parties.  *See Rothman*, 49 Cal. App. 4th at 1141 (citing *Silberg*, 50 Cal. 3d at 219); *Susan A. v. Cnty. of Sonoma*, 2 Cal. App. 4th 88, 93 (1991) ("[T]he privilege does not apply where publication is to persons in no way connected with the proceeding.").  However, courts have applied various

exceptions to the general rule in certain circumstances.  For example, courts have found exceptions for communications made to administrative agencies and law enforcement personnel "charged with enforcing the law to investigate or remedy a wrongdoing."  *Hagberg*, 32 Cal. 4th at 362-64; *see also Pettitt v. Levy*, 28 Cal. App. 3d 484, 488 (1972) (extending privilege to publications made in a city planning commission or city council proceedings).  In addition, preliminary conversations between attorneys and prospective clients or witnesses are privileged if they are in "some way related to or connected with a pending contemplated action." *Ascherman v. Natanson*, 23 Cal. App. 3d 861, 865 (1972); *see also Rubin*, 4 Cal. 4th at 1194-96 (finding communications between attorneys and residents of a trailer park who met to discuss the residents' grievances and the merits of a potential lawsuit, followed by the filing of a complaint, to be privileged); *Pettitt*, 28 Cal. App. 3d at 490 ("To accomplish the purpose of judicial or quasi-judicial proceedings, it is obvious that the parties or persons interested must confer and must marshal their evidence for presentation at the hearing.").

Another line of cases has expanded the privilege "to include publication to nonparties with a substantial interest in the proceeding."  *Wolf v. Travolta*, No. 14-CV-938-CAS(VBKx), 2014 WL 6685560, at *14 (C.D. Cal. Nov. 24, 2014) (citing *Susan A.*, 2 Cal. App. 4th at 94; *Costa*, 157 Cal. App. 3d at 678).  For example, in *Costa*, the chairman of the board of directors of a fraternal lodge organization sent a letter to lodge members in which he explained the basis of then pending litigation, and "sought the support and guidance of the membership as to the proper course of action to be undertaken by the Supreme Council on their behalf."  *Costa*, 157 Cal. App. 3d at 678.  The court held "the subsidiary lodge members to whom the letter was addressed possessed a substantial interest in the outcome of the pending litigation and as such were authorized participants therein."  *Id.*

Similarly, in *Wolf*, the court held that the litigation privilege applied to a cease and desist letter sent by plaintiff to non-parties, the defendants' clients,

– 10 –

notifying the recipients of the existing lawsuit, advising them of plaintiff's copyright ownership over a curriculum, and warning them that "if the Court determines…that the Defendants' curriculum is in fact infringing…the further implementation by you of the infringing curriculum may result in liability." *Wolf*, 2014 WL 6685560, at *13-15. In holding that the litigation privilege applies, the *Wolf* court agreed with the following reasoning of the district court in *Sliding Door Co. v. KLS Doors, LLC*, No. EDCV 13-00196 JGB (DTBx), 2013 WL 2090298 (C.D. Cal. May 1, 2013):

> the communication falls under California's litigation privilege since it has a logical relation to the action before the Court in that it advances the litigant's case by ensuring that customers are aware of the litigation and informing them of their potential liability. Therefore, the recipient of the email "had a substantial interest in Plaintiff's lawsuit against Defendants."

*Id.* at 15 (quoting *Sliding Door Co.*, 2013 WL 2090298, at * 8). *See also Abraham v. Lancaster Cmty. Hosp.*, 217 Cal. App. 3d 796, 823-24 (1990) (finding the dissemination of allegations in a pending lawsuit against a hospital administrator to the local medical community to be privileged because the community possessed a substantial interest in the outcome of the pending litigation); *eCash Techs. Inc. v. Guagliardo*, 210 F. Supp. 2d 1138, 1152 (C.D. Cal. 2001) ("[A] communication merely informing a third party of the *pendency* of this litigation must clearly fall within the privilege."); *Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1078-79 (2006) (finding communications to retailers advising them of the pending lawsuit and asking them not to carry an alleged infringing product were privileged because the recipients possessed a substantial interest in the outcome of the litigation).

Here, unlike the cases falling under the "substantial interest" exception cited above, no litigation was pending at the time CND and Revlon contacted eBay alleging Plaintiff's listings violated their intellectual property rights and asking that

they be removed.  When litigation is not yet underway, statements may still meet the requirement of "some connection or logical relation to the action" if the statements are "made with a good faith belief in a legally viable claim and in serious contemplation of litigation."  *Aronson*, 58 Cal. App. 4th at 266; *Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal.4th 1232, 1251 (2007) ("A prelitigation communication is privileged only when it relates to litigation that is contemplated in good faith and under serious consideration.").  The courts will not extend the privilege, however, "to persons who attempt to profit from hollow threats of litigation."  *See Action*, 41 Cal.4th at 1251; *see also Fuhrman v. Cal. Satellite Sys.*, 179 Cal.App.3d 408, 422 n. 5 (1986), disapproved of on other grounds by *Silberg*, 50 Cal.3d at 219.  Whether a pre-litigation communication relates to litigation that is contemplated in good faith and under serious consideration is often an issue of fact precluding determination of the issue on a motion to dismiss.  *Action*, 41 Cal.4th at 1251; *see also Visto Corp. v. Sproqit Techs., Inc.*, 360 F.Supp.2d 1064, 1070 (N.D.Cal.2005) (finding there were factual questions as to whether prelitigation demand letters fell under the litigation privilege); *Reid-Ashman Mfg. v. Swanson SemiConductor Serv., L.L.C.*, No. C-06-4693 JCS, 2007 WL 1394427, at *11 (N.D. Cal. May 10, 2007) (holding that fact questions remain as to pre-litigation statements); *Bylin Heating Sys. Inc. v. M & M Gutters, LLC*, No. 2:07-cv-00505-FCD-KJM, 2008 WL 744706, at *5 (E.D. Cal. Mar. 18, 2008) (finding a factual question remained as to whether the plaintiff "was seriously and in good faith contemplating litigation when it made the statements *prior* to the initiation of the action")

The SAC alleges The Colomer Group, on behalf of CND, first sent takedown notices to eBay reporting trademark infringement violations by Plaintiff in 2012. Thereafter, The Colomer Group and Revlon sent Plaintiff various cease and desist emails and communications threatening legal action and citing numerous concerns over Plaintiff's selling and listing of CND products.  However, despite no

indication Plaintiff complied with CND's demands, CND never commenced a lawsuit.  Based on the foregoing, the Court finds it cannot determine at this stage whether the takedown notices sent to eBay were made in connection with a proposed litigation "contemplated in good faith and under serious consideration," and, further, whether the takedown notices functioned "as a necessary or useful step in the litigation process."  *See Rothman*, 49 Cal. App. 4th at 1146; *Aronson*, 58 Cal. App. 4th at 262; *Edwards*, 53 Cal. App. 4th at 33.  For the foregoing reasons, CND's motion to dismiss causes of action IV-VII on the basis of the litigation privilege is **DENIED**.

### 2.   Tortious Interference With Prospective Economic Advantage

The elements for tortious interference with prospective economic advantage are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional [or negligent] acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant."  *Korea Supply Co. v.  Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (quoting *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.,* 42 Cal. App. 4th 507, 521-22 (1996)); *see also N. Am. Chemical Co. v. Super. Ct.*, 59 Cal. App. 4th 764, 786 (1997) (negligent interference); *Tommy Bahama Grp, Inc. v. Sexton*, No., C 07-06360 EDL, 2009 WL 4673863, at *14 (N.D. Cal. Dec. 3, 2009).  For an intentional interference claim, there is no specific intent requirement; rather "it is sufficient to plead that the defendant knew that the interference was certain or substantially certain to occur as a result of its action."  *Id.*

To properly plead the tort of intentional or negligent interference with prospective economic advantage, a plaintiff must also plead the defendant "engaged in conduct that was wrongful by some legal measure other than the fact of interference itself."  *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th

1   376, 393 (1995); *Korea Supply Co.*, 29 Cal. 4th at 1154.  An act is independently

2   wrongful if it is "unlawful, that is, if it is proscribed by some constitutional,

3   statutory, regulatory, common law, or other determinable legal standard." *Korea*

4   *Supply Co.*, 29 Cal. 4th at 1159.

5   　　　CND contends Plaintiff failed to plead any independently wrongful conduct

6   as "CND is accused of doing nothing more than seeking to enforce its registered

7   trademarks against an unauthorized reseller," and this conduct is not independently

8   wrongful.  (Mot. at pp. 12.)  CND argues that "the assertion of trademark rights to

9   shut down unauthorized activity on third-party websites specifically has been

10  recognized as a legitimate interest that cannot, as a matter of law, support a claim

11  for interference with prospective advantage." (*Id*. at p. 13.)  Plaintiff, on the other

12  hand, claims Defendants' actions were independently wrongful because Defendants

13  "did not have the exclusive right to use the term 'shellac' or to prevent Plaintiff

14  from selling product using that term when they lodged their complaint with eBay."

15  (ECF No. 38 at p. 12.)  Thus, Defendants "were engaged in an illegal and anti-

16  competitive business scheme," which was "designed to destroy competition by

17  unlawfully disrupting the legitimate business of Plaintiff, a competitor." (*Id*.)

18  　　　The Court finds Plaintiff has sufficiently alleged independently wrongful

19  conduct.  In support of its interference with prospective business advantage claims,

20  Plaintiff alleges Defendants engaged in anti-competitive business practices, which

21  are governed by California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.

22  Code §§ 17200, *et seq*.  *See Fraley v. Facebook, Inc*., 830 F. Supp. 2d 785, 810

23  (N.D. Cal. 2011) (citing *Boschma v. Home Loan Ctr., Inc*., 198 Cal. App. 4th 230,

24  252 (2011)).  The requirement of an independently wrongful act may be satisfied by

25  an alleged violation of the UCL.  *See CRST Van Expedited, Inc. v. Werner Enters.,*

26  *Inc*., 479 F. 3d 1099, 1110-11 (9th Cir. 2007).  As discussed below, Plaintiff has

27  sufficiently alleged a violation of the UCL.

28

1        In support of its argument that its conduct was justified as legitimate competitive behavior, CND cites *Lown Cos., LLC v. Piggy Paint, LLC*, No. 1:11-cv-911, 2012 WL 3277188 (W.D. Mich. Aug. 9, 2012), a Western District of Michigan case premised on Michigan state law, holding that "contacting a third party over legitimate business concerns such as breach of contract or copyright [or trademark] infringement cannot form the basis of a tortious interference claim." *Id.* at * 4.   The *Lown* court found its determination "in line [with] more general Michigan decisions holding that, where a party's actions are motivated by a legitimate business purpose, its actions do not constitute improper motive or interference." *Id.*

        CND also cites to another out-of-state case, *Dudnikov v. MGA Entm't*, 410 F. Supp. 2d 1010 (D. Colo. 2005), for the proposition that the assertion of intellectual property rights leading to the termination of an on-line eBay auction does not amount to tortious interference with prospective business relations.   *Id.* at 1018-19. The Colorado district court, interpreting Colorado law in deciding a motion for summary judgment in favor of the defendant, relied on a declaration from the person who submitted the notice of infringement to eBay stating that the defendant "held a good faith belief that the items listed in the notice . . . infringed [the defendant's] copyright, trademark and other rights." *Id.* at 1018.[3]

        While California courts have similarly recognized that interference is not

---

[3]     CND also relies on *Tommy Bahama* for the proposition "[a] registered trademark owner's use of the eBay VeRO program to request the removal of listings that the trademark owner had a good-faith basis for believing infringed its registered marks simply does not constitute tortious interference."   (Mot at p. 14.) However, the case is inapposite because with relation to the plaintiff's tortious interference with prospective economic advantage claims, the district court simply held "there is no evidence of any independent wrongful conduct because, as discussed above, [the defendant's] defamation claim (the only predicate wrongful act he has alleged) fails as a matter of law." *Tommy Bahama*, 2009 WL 4673863, at *14.

wrongful when a party is in pursuit of legitimate commercial interests, *see Korea Supply Co.*, 29 Cal. 4th at 1158-60; *Della Penna*, 11 Cal. 4th at 378, the California Supreme Court has determined that "the requirement of pleading that a defendant has engaged in an act that was independently wrongful [i.e., unlawful] distinguishes competitive behavior from tortious interference" and "'sensibly redresses the balance between providing a remedy for predatory economic behavior and keeping legitimate business competition outside litigative bounds,'" *Korea Supply Co.*, 29 Cal. 4th at 1159 (quoting *Della Penna*, 11 Cal. 4th at 378). Thus, a plaintiff defeats a claim of justification or competition privilege by proving the defendant's conduct is unlawful. *See S.F. Design Ctr. Assocs. v. Portman Cos.,* 41 Cal. App. 4th 29, 42 (1995). Here, if Plaintiff is able to establish CND violated the UCL, a claim of competition privilege would be defeated. At this stage, the Court cannot make that determination as a matter of law.

For the foregoing reasons, CND's motion to dismiss the tortious interference with prospective economic advantage claims (causes of action IV-V) is **DENIED**.

### 3.    Intentional Interference with Contractual Relations

Under California law, to state a claim for intentional interference with contractual relations, a plaintiff must allege: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998). "Because interference with an existing contract receives greater solicitude than does interference with prospective economic advantage . . . , it is not necessary that the defendant's conduct be wrongful apart from the interference with the contract itself." *Id.* (citations omitted).

CND argues that Plaintiff's intentional interference with contractual relations claim fails because (1) CND acted with a legitimate business purpose; (2) the

interference with contract claim is a restatement of the prospective economic advantage claim; and (3) Plaintiff has failed to plead damages as a result of the contractual relationship with eBay.com. (*See* Mot. at pp. 14-16.) As to CND's first argument, based on the facts alleged, the Court finds determination of whether CND's interference was justified to be inappropriate at this stage of the proceedings. "Justification or privilege is an affirmative defense and the question of whether there has been sufficient justification to avoid liability for interference with contract . . . is ordinarily for the jury," unless it appears on the face of the complaint. *Id.* at *18 (citing 40 Cal. Jur. 3d, Interference with Economic Advantage § 29); *see also Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 844 (1994).

The Court finds the defense does not appear on the face of the complaint. *Cf. Starlite Dev. (China) Ltd. v. Textron Fin. Corp.*, No. CV-F-07-1767, 2008 WL 2705395, at *18-19 (E.D. Cal. July 8, 2008) (dismissing tortious interference claims where defendant obtained court approval prior to protecting its economic interests and finding "[s]uch legal justification, as a matter of law, [to be] a complete, affirmative defense to an alleged tortious interference claim absent additional allegations"); *Dollar Tree Stores Inc. v. Toyama Partners, LLC*, No. C 10-00325, 2010 WL 1688583, at *4 (N.D. Cal. Apr. 26, 2010) (dismissing tortious interference claim where "the complaint and the [Building and Loan Agreement] disclose that [the defendant] was acting with a legitimate business purpose and was justified in discontinuing the loan disbursements"). Here, Plaintiff has alleged Defendants had no good faith belief basis for requesting the takedown. At this stage, the Court cannot determine the defense of justification, which is more appropriate for summary judgment. *See Dudnikov*, 410 F. Supp. 2d at 1018-19 (making a finding of good faith regarding the party's subjective intent in requesting a takedown based on alleged trademark infringement before granting summary judgment on the tortious interference claims).

Second, CND argues Plaintiff's claim fails because it "does not assert that it

had any right to revenue from eBay itself; rather [Plaintiff] speculates that, if it had been allowed to keep selling on eBay, it *might* have consummated sales *through* eBay to individual consumers." (Mot at pp. 14-15.)  In other words, CND argues Plaintiff's claim is nothing more than a restatement of its prospective economic advantage claim.  However, the Court finds Plaintiff has sufficiently alleged an intentional interference with contractual relations claim.  Plaintiff's SAC alleges it had contractual relationships with eBay, which were "disrupted because eBay[] removed over 100 of Plaintiff's listings."  (SAC at ¶ 66.)  Plaintiff further alleges Defendants "had specific knowledge of these contractual relationships," and it was harmed when eBay reduced "the search visibility of Plaintiff's goods on eBay's online marketplace for approximately four (4) weeks, . . . Plaintiff was effectively prevented from ever selling BlueSky Shellac gel nail polish products on eBay thereafter," and suffered lost sales (*id*. at ¶¶ 65-67).  *See Little v. Amber Hotel Co*., 202 Cal. App. 4th 280, 303-05 (2011) (finding lost profits from prospective sales may be recovered on an intentional interference with contractual relations claim as damages flowing from the misconduct).  For the foregoing reasons, CND's motion to dismiss Plaintiff's intentional interference with contractual relations claim (cause of action VI) is **DENIED**.

### 4.  Unfair Competition

The UCL does not prohibit specific activities but instead broadly proscribes "any unfair competition, which means 'any unlawful, unfair or fraudulent business act or practice.'"  *Boschma*, 198 Cal. App. at 251-52 (quoting Cal. Bus. & Prof. Code § 17200, *et seq*.); *see also In re Pomona Valley Med. Grp., Inc*., 476 F.3d 665, 674 (9th Cir. 2007).   The UCL is designed to ensure "fair business competition" and governs both anti-competitive business practices and consumer injuries.  *Id*. at 252.  "Its coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co*., 20 Cal. 4th 163, 180

1 (1999) (citations and internal quotation marks omitted); *see also In re First Alliance*
2 *Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006).

3          Each of the three UCL prongs provides a "separate and distinct theory of
4 liability" and an independent basis for relief. *Rubio v. Capital One Bank*, 613 F.3d
5 1195, 1203 (9th Cir. 2010) (internal quotation marks and citations omitted); *see*
6 *also Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).
7 Under the unlawful prong, the UCL "'borrows' violations from other laws" and
8 makes them "independently actionable." *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at
9 180. A particular practice may be unfair and actionable under the UCL, however,
10 "even if not specifically proscribed by some other law." *Id.* Plaintiff asserts that
11 Defendants' conduct violates all three prongs of the UCL. (SAC at ¶¶ 68-73.)

12          CND first argues Plaintiff's UCL claim cannot stand under the unlawfulness
13 prong since Plaintiff's tortious interference clams must fail, thereby precluding any
14 borrowing of those claims. (*See* Mot. at p. 17.) As discussed above, however, the
15 Court finds Plaintiff's tortious interference claims survive dismissal. A claim under
16 the UCL's unlawful prong may be premised upon the unlawful actions that
17 constitute tortious interference with contractual relations. *See CRST Van*
18 *Expedited, Inc.*, 479 F.3d at 1107. Accordingly, CND's motion to dismiss the UCL
19 claim (cause of action VII) under the "unlawful" prong is **DENIED**.

20          CND next summarily argues that Plaintiff has failed to sufficiently allege a
21 violation under the "unfair" or "fraudulent" prongs of the UCL. (Mot at p. 17.)
22 CND argues vaguely that "[a]s explained above, nothing in the [SAC] demonstrates
23 that CND's actions have harmed competition, or that the actions CND took to
24 protect its trademark rights were fraudulent." (*Id.*) The Court disagrees. Rather,
25 the Court finds the SAC contains sufficient allegations to meet both prongs.
26 Accordingly, CND's motion to dismiss the UCL claim under the "fraudulent" and
27 "unfair" prongs is **DENIED**.
28 ///

**B.**     **CND's Anti-SLAPP Motion to Strike**

A Strategic Lawsuit Against Public Participation ("SLAPP") is "a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights." *Dickens v. Provident Life & Accident Ins. Co*., 117 Cal. App. 4th 705, 713 (2004) (citation omitted).  CND moves to strike Plaintiff's claims for tortious interference with prospective business advantage and contractual relations and its UCL claim under California's anti-SLAPP statute, arguing its right to petition under the First Amendment protects its actions in defense of its alleged trademark.  (Mot. at pp. 17-18.)

Under the statute:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. Proc. Code § 425.16(b)(1).  The Legislature has determined the statute shall be construed broadly.  Cal. Civ. Proc. Code § 425.16(a).

California courts evaluate a defendant's anti-SLAPP motion in two steps. First, the defendant moving to strike must make "a threshold showing that the challenged cause of action is one arising from protected activity."  *Equilon Enters., LLC v. Consumer Cause, Inc*., 29 Cal. 4th 53, 67 (2002).  "The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant's] right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in [subsection (e) of] the statute."  *Id.*  (quoting Cal. Civ. Proc. Code § 425.16(b)(1)).  Second, "[i]f the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim."  *Id.*  "Put another way, the plaintiff must demonstrate that the complaint is

both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002) (internal quotation marks omitted and citations omitted).  "In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant . . . ; though the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." *Id.*; *see also* Cal. Civ. Proc. Code § 425.16(b)(2).

Section 425.16(e)(2) of the California Code of Civil Procedure protects "any written or oral statement or writing made in connection with an issue under consideration or review by a ... judicial body."  Cal. Civ. Proc. Code § 425.16(e)(2). Statements made in connection with anticipated litigation constitute protected activity within the definition of section 425.16(e)(2).  *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1263-70 (2008).  Litigation-related communications need not involve a public issue in order to be protected by the anti-SLAPP statute.  *Flatley v. Mauro*, 39 Cal.4th 299, 323 (2006) (citing *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1121 (1999)).

Section 425.15(e)(2) is not coextensive with the California litigation privilege.  *See Neville*, 160 Cal. App. 4th at 1262-63.  However, as "the two statutes serve similar policy interests," courts look to the litigation privilege to assist in construing the scope of Section 425.16(e)(2), *id.* at 1263 (citing *Flatley*, 39 Cal. 4th at 323), and have deemed statements which come within the protection of the litigation privilege to be equally entitled anti-SLAPP protection, *Healy v. Tuscany Hills Landscape & Recreation Corp.*, 137 Cal. App. 4th 1, 5 (2006).

CND argues its takedown notices to eBay, which are the subject of Plaintiff's tort and unfair competition claims, are pre-litigation communications subject to

California's anti-SLAPP statute.  Thus, the Court must first determine whether the pre-litigation statements were made "in connection with an issue under consideration or review by a . . . judicial body."  *See Neville*, 160 Cal. App. 4th at 1263-64.  "[A] statement is 'in connection with' litigation under section 425.16, subdivision (e)(2) if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation."  *Id*. at 1266.

As with the litigation privilege, where litigation has not commenced, "if a statement concern[s] the subject of the dispute and is made in anticipation of litigation contemplated in good faith and under serious consideration, . . . then the statement may be petitioning activity protected by section 425.16."  *Id.* at 1268 (internal quotations and citation omitted).  "In determining whether a statement was made in anticipation of litigation contemplated in good faith and under serious consideration, [a] court may look to how this test has been applied in cases involving the litigation privilege of Civil Code section 47."  *Bailey v. Brewer*, 197 Cal. App. 4th 781, 790 (2011); *see also Feldman v. 1100 Park Lane Associates*, 160 Cal. App. 4th 1467, 1479 (2008) ("Both the Supreme Court and the Court of Appeal have looked to the litigation privilege as an aid in construing the scope of section 425.16, subdivision (e)(1) and (2) with respect to the first step of the two-step anti-SLAPP inquiry—that is, by examining the scope of the litigation privilege to determine whether a given communication falls within the ambit of subdivision (e)(1) and (2)." (internal quotation marks and citations omitted)).

Here, the takedown notices sent to eBay reporting alleged trademark infringement violations by Plaintiff of the term "shellac" were sent before any litigation commenced.  The notices clearly concern an issue which is the subject of the present dispute, namely the trademark rights over the term "shellac."  However, as discussed above, the Court is unable to determine whether the statements were made in anticipation of litigation "contemplated in good faith and under serious consideration."  On an anti-SLAPP motion to strike, the defendant bears the burden

of making a threshold showing that the challenged cause of action is one arising from protected activity. *See Feldman*, 160 Cal. App. 4th at 1477. In deciding the issue, a court must "consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Cal. Civ. Proc. Code § 425.16(b)(2). Therefore, the Court may consider additional evidence on an anti-SLAPP motion to strike, which it cannot consider on a motion to dismiss. However, CND did not file any affidavits in support of its anti-SLAPP motion to strike addressing the issue of whether it contemplated the litigation in "good faith and under serious consideration." As addressed earlier, given the facts and circumstances of the present case, the Court has concerns about whether CND contemplated litigation in "good faith and under serious consideration" at the time the communications were made. Accordingly, CND has failed to meet its burden and its anti-SLAPP motion to strike Plaintiff's causes of action IV-VII is **DENIED**.

    **C.**    **Motion to Dismiss All Causes Against Parent Companies and Doe Defendants**

        1.   <u>Alter Ego</u>

RCPC and Revlon move to dismiss all causes against them under Rule 12(b)(6) claiming Plaintiff failed to plead facts sufficient to support an alter-ego theory of liability. (ECF No. 30-1; Mot. at pp.18-23.) "To demonstrate that the parent and subsidiary are 'not really separate entities' and satisfy the alter ego exception to the general rule that a subsidiary and the parent are separate entities, the plaintiff must make out a prima facie case '(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice.'" *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (citing *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996)); *see also RRX Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 545 (9th Cir. 1985). "The first prong of this test has alternately been stated as requiring a showing that the

parent controls the subsidiary 'to such a degree as to render the latter the mere instrumentality of the former.'" *Id.* (citing *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995)).

"In assessing alter ego, courts consider the commingling of funds and other assets of the entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership of the entities, use of the same offices and employees, use of one as a mere shell or conduit for the affairs of the other, inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers." *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014). No single factor is determinative; instead a court must examine all the circumstances to determine whether to apply the doctrine. *Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228, 245 (2002). Common ownership alone, however, is insufficient to disregard the corporate form. *Sandoval*, 34 F. Supp. 3d at 1040. "Conclusory allegations of 'alter ego' status are insufficient to state a claim." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003). "Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Id.*

Plaintiff alleges defendants CND and RCPC are wholly owned operating subsidiaries of defendant Revlon. (SAC at ¶¶ 4-5.) Plaintiff alleges that "[b]ecause Revlon[] and RCPC step beyond corporate formalities to control and direct CND with regard to day-to-day management of its trademark portfolio, CND should be considered an alter ego of both entities for purposes of the present dispute." (SAC at ¶ 28.) Plaintiff further alleges that Revlon, through RCPC, acquired The Colomer Group, along with CND, in or about August 2013, and "thereafter began directly controlling the management and enforcement of CND's trademarks, including the CND Marks." (*Id.*)

To demonstrate this direct control, Plaintiff alleges and attaches documents showing the correspondence address for CND was changed to Revlon's corporate

– 24 –

1   headquarters and the counsel of record for CND was changed to Revlon's counsel,

2   including its "Vice President Law, Trademarks & Copyrights for Revlon, Inc." (*Id.*

3   & Exhs. A, C, D, J, K.)  Plaintiff further alleges that after the acquisition, legal

4   counsel for Revlon sent correspondence to Plaintiff claiming Plaintiff committed

5   unlawful inducement to breach contract by reselling CND nail products online, and

6   made claims that Plaintiff was infringing CND's trademark rights, and that

7   representatives of Revlon sent multiple takedown notices to eBay reporting

8   trademark infringement violations of the term "shellac." (*Id.* at ¶¶ 30-32.)  Lastly,

9   Plaintiff alleges that Revlon and RCPC, on behalf of CND, claim to hold the

10  exclusive trademark rights associated with the term "shellac." (*Id.* at ¶ 18.)

11      The Court agrees that these allegations are insufficient to find that CND is an

12  alter ego of Revlon and RCPC.  *See Calvert*, 875 F. Supp. at 678-79.  Plaintiff has

13  not alleged sufficient unity of interest and ownership such that the separate

14  personalities of the entities no longer exist and that a failure to disregard their

15  separate identities would result in fraud or injustice.

16      However, the SAC does not premise the liability of Revlon and RCPC

17  entirely on an alter-ego theory of liability.  Rather, Plaintiff premises its tortious

18  interference with prospective economic advantage and contractual relations claims

19  and UCL claim on the takedown notices sent to eBay by The Colomer Group (on

20  behalf of CND) in 2012 (SAC at ¶ 25), and the takedown notices sent to eBay by

21  Revlon and CND (*id.* at ¶31) in January 2014.  (*Id.* at ¶¶ 53, 59, 69.)  The SAC also

22  seeks "a judicial declaration that it is not infringing any trademark owned by any

23  Defendants by selling the aforesaid goods under the name 'shellac,'" (*id.* at ¶ 1),

24  and that Revlon and RCPC "claim to hold the exclusive trademark rights associated

25  with the term 'shellac'" (*id.* at ¶ 18).

26      For the foregoing reasons, the Court finds that Plaintiff has not sufficiently

27  alleged CND is the alter ego of Revlon and RCPC.  As RCPC's liability under

28  causes of action IV-VII is entirely premised on an alter ego theory of liability, the

Court **GRANTS** the motion to dismiss as to RCPC on those claims.  However, in all other respects, the Court **DENIES** Revlon's and RCPC's motion to dismiss.

### 2. "Doe" Defendants

"As a general rule, the use of 'John Doe' to identify a defendant is not favored."  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  However, situations may arise "where the identity of alleged defendants will not be known prior to the filing of a complaint. In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Id*.

Here, Plaintiff uses the "Doe" designation for The Colomer Group, a party Plaintiff alleges it has been unable to identify and locate.  (SAC at ¶ 7.)  Defendants claim it is a "matter of public record that Revlon, Inc. acquired The Colomer Group last year in the very transaction that brought CND into the Revlon corporate family."  (Mot. at p. 23.)[4]  Defendants further claim The Colomer Group "is the colloquial name used to refer to the companies that owned CND (among other affiliate companies in the U.S. and worldwide) prior to the acquisition."  (*Id*. at pp. 23-24.)

Revlon and RCPC move to dismiss all claims against Does 1 through 10 because the SAC "makes clear that it is CND's actions that are at issue," and nothing in the SAC would support the liability of any Doe defendant.  (Mot. at p. 23.)  On the contrary, Plaintiff makes several allegations against The Colomer Group, including but not limited to, the allegation that The Colomer Group submitted the takedown notices to eBay claiming ownership of Defendants'

---

[4]    In the SAC, Plaintiff alleges "Revlon, Inc., through its wholly owned operating subsidiary RCPC, acquired The Colomer Group, which owns CND, as well as other assets" on or around August 2013.  (*Id*. at ¶ 28.)

1   trademarks (SAC at ¶ 25, Exh. E), which form the basis of Plaintiff's state law
2   claims, as discussed above.   Given the alleged corporate relationship, Plaintiff
3   should be able to determine the identity of any party Plaintiff intends to hold liable
4   through discovery.   Accordingly, the Court **DENIES** the motion to dismiss all
5   causes of action against the Doe defendants.

6   **IV.     CONCLUSION & ORDER**

7        For the foregoing reasons, CND's motion to dismiss causes of action IV-VII
8   is **DENIED** (ECF No. 30); CND's motion to strike causes of action IV-VII is
9   **DENIED** (ECF No. 31); and Revlon's and RCPC's motion to dismiss is **DENIED**
10  **IN PART** and **GRANTED IN PART** in that RCPC is dismissed as to Plaintiff's
11  fourth, fifth, sixth, and seventh causes of action (ECF No. 32).

12       **IT IS SO ORDERED.**

13

14  **DATED:  June 19, 2015**

15                                          Hon. Cynthia Bashant
                                            **United States District Judge**

16

17

18

19

20

21

22

23

24

25

26

27

28